(92 South. 372)

No. 23457.

## BUCK v. LATIMER.

(May 22, 1922.)

*(Syllabus by the Court.)*

Costs ⌖232 — Courts ⌖224(9) — Appeal transferred when claim inflated to give jurisdiction; on transfer of appeal in which claim inflated to give jurisdiction, costs taxed against plaintiff.

Where plaintiff's claim is manifestly inflated for the purpose of giving appellate jurisdiction to this court, the appeal will not be entertained here, but will be transferred to the proper appellate court; and plaintiff will be taxed with the costs of this court.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Stella Boutain Buck against Belle Bradley Latimer. Judgment for defendant, and plaintiff appeals. Appeal transferred to the Court of Appeal.

Jos J. Ritayik, of New Orleans, for appellant.

Charles Louque, of New Orleans, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. Plaintiff sues for personal injuries alleged to have been suffered by having her foot go through a defective floor in the home rented by her husband from defendant.

She claims $39 special damages, and $5,000 as follows:

"That petitioner's right leg was badly injured and bruised; became black and blue and remained so for a period of ten days, causing petitioner severe pains; that petitioner's right side and hip were so seriously injured that about a week after said fall (which occurred December 17, 1917) petitioner was compelled to go to bed under the advice of her attending physician, and remained in bed up to January 15, 1918. That petitioner suffered intense physical pain and mental anguish from the time of said fall, both during the period she was compelled to go to bed and prior thereto; and is still suffering with pains in her side and hip (to wit, on April 4, 1918)."

There is also a further allegation as follows:

"That at the time petitioner fell through said flooring, petitioner was pregnant, and gave birth to a child on February 16, 1918; that said child was injured by her said fall, and petitioner reserves all the rights of her said child for all injuries it sustained."

This last allegation, as will be seen, is not made in connection with plaintiff's own case; and is here mentioned only to be quite fair to plaintiff, as it tends to explain her otherwise wholly inexplicable reference to "mental anguish."

## I.

We are not judging this case, as we intend declining jurisdiction thereof. But assuming that plaintiff has some claim against defendant, it is none the less clear, on the very face of her petition, that her claim is grossly exaggerated. And this is still more apparent from an examination of the evidence adduced in support thereof. We need mention only the testimony of the attending physician, a witness perfectly reliable and competent, and produced by plaintiff herself. He testified, in substance:

"I treated her for a contusion of the hip. She had pains, swelling, and discoloration; that is about all. I kept her in bed and saw her three times, about every other day for six or seven days. She seemed to be suffering very much at the time. She was pregnant. My object in keeping her in bed was *rest*, for the condition of the hip; and fear of a premature birth. I prescribed for both conditions. There was no permanent injury. No, she was not in perfect condition when I discharged her; I told her to remain in bed for a while and rest herself. I didn't see that it was necessary to come back. There was no danger when I left, as far as the injury was concerned; I kept her in bed on account of her condition, being pregnant. I told her she should remain in bed at least five or six days after I left; and if she saw any benefit, to remain longer; not to take too much exercise. It was more on account of her general condition; it was to prevent a premature birth."

Suffice it to say further that according to her own testimony she called her physician on the very day of the accident; and according to her petition she went to bed about a week afterwards, or just about the time when the physician advised her to do so, on discharging her; that according to her petition she was out of bed more than a month before the birth of her child; and according to her testimony the birth was rather tardy than premature, and was attended by no unusual circumstances; and finally the child suffered no injury whatever.

To sum up the whole matter: Plaintiff suffered some days of pain from the injury received, some days of inconvenience from having to keep her bed, and some days of anxiety for the possible consequences to her unborn child. Otherwise the whole situation at the end of a month was just as if the accident had never occurred at all; for the petition does not claim that her "mental anguish" lasted beyond the period she was compelled to keep her bed, and the evidence, as aforesaid, shows that her injuries lasted but a week or so.

## II.

Under these circumstances, we cannot conceive how plaintiff could possibly expect to recover an amount even approximating the lower limit of this court's jurisdiction ($2,000); and hence we conclude that plaintiff has exaggerated her claim for the purpose of giving this court jurisdiction. That she cannot do; and accordingly we will transfer the case to the proper appellate court, taxing her with the costs of this court.

### Decree.

It is therefore ordered that this appeal be transferred to the Court of Appeal for the Parish of Orleans, provided that same be lodged in that court within 15 days after this decree becomes final; plaintiff to pay the costs of this court, and all other costs to abide the final result.